**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

|  |  |
|---|---|
| WAYNE K. LANGFORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner, )<br>Social Security Administration, )<br>)<br>Defendant. )<br>_____ ) | Case No.: 4:12-cv-125 |

## **REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Wayne K. Langford ("Mr. Langford") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Mr. Langford's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and his claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act. Both parties filed motions for summary judgment, ECF Nos. 10 and 14, with briefs in support, ECF Nos. 11 and 15, which are now ready for resolution.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Mr. Langford's Motion for Summary Judgment, ECF No. 10 be **DENIED**; the Defendant's Motion for Summary

Judgment, ECF No. 14, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED** and that this case be **DISMISSED WITH PREJUDICE.**

## I. <u>PROCEDURAL BACKGROUND</u>

Mr. Langford filed an application for DIB on July 21, 2009 and an application for SSI on August 12, 2009. ECF Nos. 11 at 4; 13 at 2.[1] Both applications allege a disability onset date of April 25, 2009. R. 16; 161-169; 171-179.[2] Mr. Langford's claims were first denied on June 8, 2010, and then again upon reconsideration on December 10, 2010. R. 16; 98-99; 128-129. On January 31, 2011, Mr. Langford filed a request for a hearing in front of an administrative law judge ("ALJ"). R. 16; 148. The hearing was held in front of ALJ Jeffrey M. Jordan on November 3, 2011, during which the testimony of Mr. Langford, his wife Annette Langford, and vocational expert ("VE") Robert Edwards was taken. R. 16. After the hearing, ALJ Jordan held the record open to allow Mr. Langford to submit additional medical records. *Id.* Mr. Langford's attorney submitted additional records on December 21, 2011, and requested a 20-day extension to file additional records from the VCU Health System dated November 17, 2011. *Id.* No additional records were submitted, and ALJ Jordan issued his decision denying Mr. Langford's claims on January 17, 2012. R. 13. After requesting review of the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council") on February 29, 2012, R. 160, the Appeals Council denied his request for review on June 1, 2012, making ALJ Jordan's decision the final decision of the Acting Commissioner. R. 1-5. Mr. Langford filed his complaint for judicial review of the Acting Commissioner's decision on

---

[1] The certified administrative record was filed under seal on February 14, 2009, pursuant to Local Civil Rules 5(B) and 7(C)(1). While the parties agree on the dates of Mr. Langford's initial application for DIB and SSI as stated above, the record reflects that Mr. Langford applied for DIB on August 12, 2009, and that he applied for SSI on September 2, 2009.

[2] "R." refers to the certified administrative record.

2

August 15, 2012, ECF No. 3, the Acting Commissioner filed an Answer on February 14, 2009, ECF No. 6, and the parties filed their cross motions for summary judgment, ECF Nos. 10 and 14. The matter is now ripe for adjudication.

## II. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). The Acting Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Moreover, the Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the

claimant. *Hays*, 907 F.2d at 1456-57. Overall, if the Acting Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Acting Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

### III. <u>FACTUAL BACKGROUND</u>

In every Social Security disability claim analysis, the ALJ is required to employ a five-step sequential evaluation to determine the claimant's eligibility, and it is this process that the Court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520 and 416.920. Here, the ALJ made the following findings of fact: First, Mr. Langford has not been engaged in substantial gainful employment since April 25, 2009, the alleged onset date of disability. R. 18. Second, Mr. Langford had a severe impairment, specifically: disorders of the back, hypertension, and heart disorder/reduced systolic left ventricular function. R. 19. Third, Mr. Langford did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404. *Id.* Fourth, in determining that Mr. Langford has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), the ALJ found that Mr. Langford was unable to perform any past relevant work. R. 19-22. Fifth, Mr. Langford does not have an impairment that prevents him from any substantial gainful employment because there are jobs that existed in significant numbers in the economy that Mr. Langford could perform. R. 23.

Mr. Langford raises two issues on review, both regarding the ALJ's RFC assessment that

found Mr. Langford able to perform just less than the full range of light work.[3] First, Mr. Langford argues that the ALJ erred by failing to pose a sufficient hypothetical question to the vocational expert. Second, Mr. Langford claims that the RFC finding of light work is not supported by substantial evidence. The Court disagrees with both arguments and would affirm the final decision of the Acting Commissioner.

## IV. ANALYSIS

### A. The hypothetical question posed to the vocational expert was sufficient as a matter of law and the ALJ's RFC assessment of light work is supported by substantial evidence in the record.

Mr. Langford argues that the ALJ's RFC finding of light work and the hypothetical to the VE were both insufficient because neither included the frequency at which Mr. Langford would need to alternate between sitting and standing while at work. ECF No. 11 at 14 (citing *Castrejon v. Apfel*, 131 F. Supp. 2d 1053, 1057 (E.D. Wisc. 2001)). In *Castrejon*, the Court interpreted Social Security Ruling 96-9p,[4] and ultimately held that an ALJ's RFC finding of sedentary work with a sit/stand option was insufficient when the ALJ failed to specify the frequency of sitting and standing in both the RFC finding and the hypothetical to the VE. *Castrejon*, 131 F. Supp. 2d at 1057. Mr. Langford argues that additional factors, such as his use of a walking cane, and the pain he experiences when sitting for extended periods of time, make the frequency of the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

[4] "Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work" S.S.R. 96-9p, 1996 WL 374185, * 7 (S.S.A. July 2, 1996). Also, the court in *Castrejon* erroneously cited SSR 96-8p instead of 96-9p, as did Mr. Langford. *See* ECF No. 11 at 14.

stand/sit option that much more imperative. ECF No. 11 at 16-17. In all, Mr. Langford asks this Court to remand this case to the Commissioner because the ALJ allegedly did not comply with the requirements of SSR 96-9p when failing to specify the sit/stand option frequency. The Court is not persuaded.

First, SSR 96-9p discusses the frequency of a sit/stand option only within the context of less than a full range sedentary RFC finding. Indeed, the title of SSR 96-9p is "Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work – *Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*." (emphasis added).[5] The case upon which Mr. Langford relies, *Castrejon*, reviewed an ALJ's RFC determination that found the claimant could "perform sedentary work which permits a sit/stand option . . . ." 131 F. Supp. 2d 1053, 1055. Here, however, the ALJ found Mr. Langford has the residual functional capacity "to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)." R. 19. Simply stated, SSR 96-9p does not apply to light work. *Wright v. Astrue*, No. 1:09-cv-0003, 2012 WL 182167, *8 (M.D.N.C. Jan. 23, 2012) ("SSR 96-9p 'provides guidance for situations in which an individual's RFC permits less than a full range of sedentary work.' [citations omitted] . . . Where, as here, an individual can perform light, rather than sedentary, work, SSR 96-9p is inapposite.") (citing *Hodge v. Barnhart*, 76 F. App'x 797, 800, 2003 WL 22176639, *2 (9th Cir. Sept. 19, 2003) ("Ruling 96-9p does not apply to light work."); *Vallejo v. Astrue*, No. 3:10cv445, 2011 WL 4595259, at *8-10 (W.D.N.C. Aug. 4, 2011) (adopting position that SSR 96-9p does not apply where ALJ found claimant capable of light—rather than just sedentary—work and citing similar holdings in *Smith v. Astrue*,

---

[5] "Purpose: To explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment *for less than a full range of sedentary work* on and individual's ability to do other work." 1996 WL 374185, *1 (emphasis added).

6

No. 5:09cv1581, 2010 WL 3749209, at *19 n.26 (N.D. Fla. Aug. 25, 2010))) (additional citations omitted). Therefore, SSR 96-9p does not apply to the ALJ's light work RFC assessment for Mr. Langford, and no additional specificity with the sit/stand option is required.

Similarly, "[t]he Fourth Circuit has determined that a hypothetical restricting the claimant to light work with a sit/stand option adequately reflects the claimant's limitations." ALJ Jordan asked the vocational expert: "If the individual required a sit/stand option, could the individual still perform those jobs, sir?" R. 70. After previously describing a hypothetical that restricted Mr. Langford to light work, this question regarding the sit/stand option adequately reflected Mr. Langford's limitations. Moreover, while the VE testified that a sit/stand option would reduce the available cashier jobs and hand packer jobs, *id.*, on cross-examination by Mr. Langford's attorney, the vocational expert testified that "a cane would not prevent these jobs, [or a] person from doing these jobs, it would change the way they did the jobs." R. 71. Consequently, Mr. Langford's additional argument that it is "imperative to know the frequency of the stand to sit position change with the use of the cane" is also unavailing. Therefore, the Court finds that the ALJ's hypothetical question to the vocational expert was sufficient as a matter of law.

Lastly, Mr. Langford contends that the ALJ's RFC finding of light work was not supported by substantial evidence in the record. To support his contention, Mr. Langford relies primarily on medical evidence dated before his March 2010 back surgery, which documents a history of pain and weakness in his lower extremities. ECF No. 11 at 14-16. The ALJ found that Mr. Langford could "perform a limited range of light work: He can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. He can stand/walk about six hours and sit six hours within an eight-hour workday. He should avoid climbing ladders, ropes, and scaffolds,

7

but he can perform other postural movements such as balancing, stooping, bending, kneeling, crouching, and crawling, on an occasional basis." R. 22. In making this finding, the ALJ gave greater weight to the reports of non-examining state agency consultants, and less weight to Mr. and Mrs. Langford's testimony, and Dr. Rawling's state-sponsored examination. R. 21-22. Specifically, Mr. Langford claims he cannot perform even sedentary work, let alone light work, due to hypertension, diabetes, reduced systolic left ventricular function, and back/leg pain due to multilevel lumbar degenerative disc and facet disease with nerve root impingement at L2-3. R. 20. His wife (from whom Mr. Langford is separated and does not cohabitate with) supported his allegations. *Id.* However, the ALJ found that Mr. and Mrs. Langford "appear to overestimate the severity and limiting effects of his impairments." R. 21. The Court would affirm the final decision of the Acting Commissioner because the ALJ's findings are based on substantial evidence in the record, as discussed below.

First, while Mr. Langford's blood sugar levels are not completely controlled, the ALJ found he is noncompliant with prescribed medications and does not consistently check his blood sugar levels. R. 21; 319-28; 376-77; 431-36. Second, his diabetes has not evolved into significant complications, despite lack of treatment. *Id.* Third, Mr. Langford's hypertension is stable and controlled by medication, and he had no significant cardiac complaints prior to February 2010. R. 319-28; 378-406; 422-36. Even then, pain complaints were categorized as "mildly severe," while his energy levels and activity were normal. R. 402. Fourth, even though Mr. Langford continued to report chest pain and shortness of breath into late-2010 to 2011, all cardiovascular, respiratory, and chest examinations were consistently normal, or only mildly abnormal. R. 324-28; 359-64; 376; 381-82; 385-86; 389-90; 393; 424-27; 429-30; 432. Fifth,

and most notably, there is not substantial evidence in the record to support the contention that Mr. Langford's back and leg pain are completely debilitating to render him disabled and unable to work. Mr. Langford had back surgery—specifically a lumbar partial hemilaminectomy L2-3 left side with excision of HNP—performed by Dr. McAdam on March 22, 2010. R. 350-53. Less than one month prior to surgery,[6] on February 27, 2010, state agency consultant Dr. Rawlings examined Mr. Langford and observed that he had "difficultly getting out of a chair and onto the exam table, left lower extremity weakness, loss of sensation, . . . decreased range of motion, and difficulty walking such that she believed he required a cane for ambulation." R. 324-28.[7] The ALJ gave little weight to this examination, however, because the ALJ erroneously believed that it was completed shortly after his back surgery. R. 21-22. This error by the ALJ is harmless, however, because had the ALJ correctly noted the exam by Dr. Rawlings took place less than one month before the surgery, it would be reasonable to afford the exam even less weight due to the pre-surgery context. Of course Mr. Rawlings physical condition had not improved and his range of motion was limited at the time of this examination: surgery had not yet occurred. Regardless, in giving Dr. Rawling's examination less weight, the ALJ noted that Mr. Langford's "treating surgeon show[ed] that his ability to do work-related activities significantly improved just a short time later [post-surgery]." R. 22; 333 ("On April 16, 2010, for example, [Mr. Langford] had varied complaints, but his surgeon, Dr. McAdam, indicated that some of his complaints 'were out of proportion to his objective exam,' which showed no

---

[6] In his decision, the ALJ erroneously states that Dr. Rawlings examined Mr. Langford less than one month after his back surgery, when in fact, from the record, it appears Dr. Rawlings examined him one month before his back surgery (but did not issue her report until three days after the surgery). *Compare* R. 22, *with* R. 324-28. Dr. Rawlings noted that "surgery is pending to remove herniated disc fragments and may result in improved function afterwards." R. 328.

[7] Because this examination occurred less than one month before Mr. Langford's back surgery, it is not surprising to the Court that Mr. Langford had difficulty ambulating with lower extremity weakness.

9

paraspinal muscle spasm or neurological findings."). Moreover, a couple months after the surgery on May 25, 2010, Mr. Langford "reported that the left leg pain he experienced before the surgery had completely resolved." R. 340. The ALJ therefore concluded that a light work RFC assessment was appropriate in accord with the state agency consultants' recommendations. R. 22; 74-97; 100-127.

The ALJ held that Mr. Langford was not disabled from April 25, 2009 until the date of the decision, January 17, 2012, and there is substantial evidence in the record to support both that ultimate conclusion, and the RFC assessment of light work. R. 24. First, there is substantial evidence to support the ALJ's decision not to afford great weight to the testimony of the Langfords, and to Dr. Rawlings report, which discussed symptoms, pain levels, and impairments prior to Mr. Langford's back surgery on March 22, 2010. Mr. Langford was consistently non-compliant with medication plans to treat his diabetes, hypertension, and pain symptoms, and while pain and weakness existed in his lower extremities, it was treated through medication, and eventually surgery. R. 19-22. Subsequently, post-operation, there is evidence in the record that shows the surgery was successful, in that the pain was mitigated. R. 22; 340; 350-53 ("[Mr. Langford reported that the left leg pain he experienced before surgery had completely resolved . . . [and] Dr. McAdam stated that he was not disabled to work and did not fit the criteria for 'SS Disability.'"). Specifically, in his first examination at VCU Health System on August 24, 2011, Dr. Muriel-Pastrana noted his strength as "4/5 in lower extremities . . . [and declined to prescribe Vicodin for the alleged pain because] he has not use[d] medication for 5 months and has been able to tolerate the pain." R. 432. Similarly, in his second examination at VCU Health Systems on November 16, 2011, while Dr. Potfay increased his pain medications, she also reported

"[n]ormal range of motion, normal strength, [with] some atrophy of [left] quad." R. 438-441. While it is apparent from the record that Mr. Langford suffers from pain or weakness in his lower extremities, upon examination of the record as a whole, and without re-weighing the conflicting evidence, making credibility determinations, or substituting its judgment for that of the Acting Commissioner, the Court finds there is substantial evidence in the record to support the ALJ's RFC determination of light work for Mr. Langford. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

## V. **RECOMMENDATION**

For these reasons, the undersigned **RECOMMENDS** that Mr. Langford's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the Defendant's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VI. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of

11

this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to amend the Defendant's name in the caption of the case to read, "Carolyn W. Colvin, Acting Commissioner, Social Security Administration," and is further **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 11, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Barbara Jeans Evans-Yosief
Evans-Yosief Law Firm
1517 Hardy Cash Drive
Hampton, Virginia 23666
Counsel for the Plaintiff

Daniel Patrick Shean
United States Attorney's Office
World Trade Center, Suite 8000
101 West Main Street
Norfolk, Virginia 23510
Counsel for the Defendant

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
September 12, 2013